165 N.J. Super. 131 (1979)
397 A.2d 1092
STATE, IN THE INTEREST OF M.P.C., A JUVENILE, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1978.
Decided January 5, 1979.
*134 Before Judges MATTHEWS, KOLE and MILMED.
Mr. Joseph Castiglia argued the cause for appellant (Mr. Donald R. Conway, attorney).
Mr. Mark J. Treacy, Assistant Prosecutor, argued the cause for respondent (Mr. Roger W. Breslin, Jr., Bergen County Prosecutor, attorney).
*135 The opinion of the court was delivered by KOLE, J.A.D.
M.P.C., a juvenile (hereafter "defendant"), was charged with delinquency in causing the death of another by driving a vehicle carelessly and heedlessly, in willful or wanton disregard of the rights or safety of his passenger, the decedent. N.J.S.A. 2A:113-9, N.J.S.A. 2A:4-44(b). The Juvenile and Domestic Relations Court granted the prosecutor's motion for the release of the results of an alcohol blood level test performed on defendant at the Valley Hospital shortly after the accident in the early morning of March 5, 1977. Defendant and his mother had refused to authorize the release of the test on the ground that it would violate the patient-physician privilege provided by N.J.S.A. 2A:84A-22.1 et seq.
We granted defendant leave to appeal. The facts are amply set forth in the reported opinion of the trial court, 152 N.J. Super. 519 (1977).
We affirm, but for reasons other than those given by the court below. To the extent that State v. Amaniera, 132 N.J. Super. 597 (Cty. Ct. 1974), is contrary to our determination herein, it is disapproved.
There is the strong public policy underlying the enforcement of the drunken driving law and the blood alcohol test requirements relating thereto. See State v. Macuk, 57 N.J. 1 (1970); State v. Burns, 159 N.J. Super. 539 (App. Div. 1978). Thus, it has been stated that in drunken driving cases, notwithstanding the invalidity of an arrest, the subsequent enforced subjection of a defendant to an examination for intoxication is justified as an emergency measure to assure the State against loss of evidence of defendant's guilt of an offense which "poses an extremely grave menace to the public safety and welfare." State v. Macuk, supra, 57 N.J. at 8. It is immaterial that the blood test was performed as an incident of an invalid arrest, since it is "elementary that the alcoholic content of human blood begins to diminish after drinking stops," and where an officer has probable cause to believe a driver to be intoxicated, he is "obviously *136 confronted with an emergency." State v. McMaster, 118 N.J. Super. 476, 479 (App. Div. 1972). See also, State v. Tolbert, 100 N.J. Super. 350 (Cty. Ct. 1968).[1]
A statutory privilege, such as that between a patient and physician, is to be construed restrictively, since its allowance obstructs the search for the truth. The privilege must be interpreted "in sensible accommodation to the aim of a just result. * * * [C]ompetency should be regarded as the rule and incompetency as the exception * * *." State v. Briley, 53 N.J. 498, 505-506 (1969). See also In re Farber (and New York Times Co.,), 78 N.J. 259, at 301 (1978). Such a privilege is accepted only because, in the particular area concerned, it serves a more important public interest than the need for full disclosure. State v. Briley, supra.
It has been said that the purpose of the patient-physician privilege is to enable the patient to secure medical services without fear of betrayal and the unwarranted embarrassing and detrimental disclosure in court of information which might deter the patient from revealing his symptoms to the doctor to the detriment of his health. See Branch v. Wilkinson, 198 Neb. 649, 256 N.W.2d 307, 312 (Sup. Ct. 1977); State v. Staat, 291 Minn. 394, 192 N.W.2d 192, 195 (Sup. Ct. 1971).
With this purpose in mind, and considering the restrictive interpretation to be given to statutory privilege, we are satisfied that here and, indeed, in the usual case, the patient-physician privilege must give way where it conflicts with the sensible administration of the law and policy relating to drunken driving by persons who (1) in an appropriate fashion have been apprehended by the police with probable cause to believe that they have been driving while intoxicated, and (2) have been caused by the police to be taken to an appropriate medical facility (see State v. *137 Burns, supra) for the purpose, among others, of a blood alcohol test.[2]
So viewed, we have concluded the statutory patient-physician privilege is inapplicable to the present case.
We agree with the trial judge that a blood test is a "confidential communication" under N.J.S.A. 2A:84A-22.1(d), since that term is defined as including information obtained by an examination of the patient.
However, the definition of "patient," N.J.S.A. 2A:84A-22.1(a), negates the conclusion that, under the circumstances of a case such as this, a defendant may be deemed a "patient" covered by the statute and thus entitled to the protection of the privilege. "Patient" is defined, among other things, as a person who for the sole purpose of securing treatment or a diagnosis preliminary to treatment of his physical or mental condition, consults a physician or submits to an examination by a physician. It is inconceivable that this defendant, who was in a serious accident and had been caused to be transported to the hospital by police who plainly had probable cause to believe he had been driving while intoxicated, should be deemed to be a person who submitted to examination by a physician for the sole purpose of treatment or diagnosis.
There is no doubt from the evidence here, and the trial judge properly so found, that the police had assumed custody of this defendant from the moment he was apprehended at the scene of the accident and that such custody continued while he was in the hospital. Nor is there any doubt that one of the purposes in their having defendant taken to the hospital was to have a blood alcohol test performed in furtherance of their duty to enforce the law, as well as to have defendant properly diagnosed and treated. *138 Under these circumstances, the request for such a blood test or the results thereof should have been honored by the physician, the nurse and the hospital, irrespective of whether the order to draw blood was given by the physician before or after the officers made their request or was carried out pursuant to such order, rather than such request.
Similarly, the officers' request should have been honored even though there was no strict compliance with the agreement between county and the hospital. Of course, it is desirable to follow the procedures set forth in any such agreement; but the agreement itself cannot bar the use or admissibility of evidence which, as here, was otherwise lawfully obtained or obtainable.
We take issue with the statement in Amaniera, supra, that the privilege applies even though "the police were standing by, prevented from acting only by reason of ongoing medical attention. The answer is that application of the privilege depends on the relationship of defendant to his doctor and not upon police propinquity." 132 N.J. Super. at 603. Police propinquity may well be the significant factor in a case of this kind where a timely demand is made for the taking of a blood alcohol test or the results thereof.
The court below premised its order, which refused to recognize the privilege, on the exception contained in N.J.S.A. 2A:84A-22.6. We have concluded that that exception is inapplicable to the present case. There is no evidence here, or an inference therefrom, that the services of the physician were sought or obtained to enable defendant to escape detection or apprehension after commission of an offense. Although defendant may be attempting to use the privilege to escape apprehension and proof that might lead to a conviction, the physician's services clearly were not sought for this purpose. Nor is this case within the exception simply because the police brought defendant to the hospital not only for treatment but basically to determine the existence of illegal conduct. We do not agree with the trial judge *139 that that provision was intended to bar the privilege where "treatment was originally sought for diagnostic purposes only, despite * * * independent evidence of wrongdoing" or that it is "obviously inferential that the assertion of the privilege" in that event is "for the purpose of avoiding detection."
Affirmed.
NOTES
[1] The credible evidence supports the trial judge's finding that at no time since the placing of defendant in the police car was he at liberty to leave; he was thus in police custody while at the hospital.
[2] There may be cases where the privilege may apply even where drunken driving is involved. But neither the instant case nor, as we read the facts therein, Amaniera, supra, presents such a situation.